REGAN, Judge.
Plaintiff, Donald E. French, individually and on behalf of his minor daughter, Lucille Patricia French, instituted this suit against the defendants, Morris Mathews and his wife, Mrs. Yvonne Bayhi Mathews, endeavoring to recover the sum of $22,500, for injuries incurred by his daughter, and $272.50 expended by him for medical attention, as a result of an accident which occurred on April 10, 1952, when she leaned against an insecure bannister in 802 Jackson Avenue, which collapsed causing her to fall and fracture her nose.
The defendants, after pleading innumerable exceptions, finally answered and denied the occurrence of the accident or that any written notice had been given to them relative to the condition of the bannister; in the alternative, they pleaded the contributory negligence of the child. Defendants then reconvened claiming the amount of $170, representing $60 for the cost of a hoi water heater, $25 for cleaning the premises and $85 for unpaid rent.
There was judgment in favor of the plaintiff, individually and for the use and benefit of his minor daughter in the respective amounts of $272.50 and $1,500, against Mrs. Yvonne Bayhi Mathews and dismissing his suit as to Morris Mathews. There was also judgment in reconvention in favor of Mrs. Mathews and against French in the sum of $145. From the judgment predicated on the principal demand, Mrs. Mathews has prosecuted this appeal and plaintiff has answered requesting that the amount thereof awarded him for the benefit of his minor daughter be increased to the sum of $22,500. Since the plaintiff did not appeal from the judgment dismissing his claim against Morris Mathews or from the judgment in reconvention these aspects of the case are not now before us.
The record reveals that Mrs. Yvonne Bayhi Mathews acquired the property designated by the municipal Nos. 800-802 Jackson Avenue on August 19, 1940, which was five months prior to her marriage to *199 Mathews. During the interval between the acquisition thereof and her subsequent marriage to Mathews, he administered the property by virtue of a general power of attorney and continued to do so, with Mrs. Mathews’ consent, after their marriage. On April 24, 1950, Mrs. Isabella French, wife of the plaintiff, entered into a written contract of lease, as lessee, with Morris Mathews, lessor, for the portion of this property designated as 802 Jackson Avenue, which was to be used for the purpose of operating a confectionery and as living quarters. The other commercial portion of this property, designated as 800 Jackson Avenue, was occupied by George Mathews, son and stepson respectively of Mr. and Mrs. Morris Mathews, wherein he conducted a laundry. On April 10, 1952, between the hours of 4:30 and 5:00 p. m., plaintiff’s nine year old daughter was standing on the upper rear porch of 802 Jackson Avenue leaning against the bannister, when it collapsed causing her to fall to the ground, a distance of approximately twenty feet, resulting in a fracture of her nose and other facial injuries of a less serious nature.
The plaintiff insists that the dilapidated and decayed condition of the bannister was the proximate cause of the collapse thereof and the resulting injuries incurred by his child; that Mrs. French had, on innumerable occasions, complained to both George and Morris Mathews of this condition.
The defendant, in resisting the foregoing contentions, maintains that the bannister was not defective or insecure, but that it was caused to fall by the unreasonable behavior of the child; or if it was in a defective condition notice thereof never emanated from the lessee in conformity with the lease which provided “lessor shall not become responsible * * * for * * * vices or defects, except he neglect to have repairs made within a reasonable time, after being notified in writing by lessee * * * ” and, in the alternative, the defendant pleads the contributory negligence of the child.
The trial judge in his written reasons for judgment found as a fact that the bannister was defective in that it was insecurely attached to a supporting post and it collapsed under reasonable pressure when leaned upon by the child; that innumerable complaints relative to the bad condition of the premises had been made to both George and Morris Mathews, whom he concluded were acting as the agents of Mrs. Mathews and finally, he was of the opinion that a child nine years of age could, under certain circumstances, be guilty of contributory negligence, but that this child was unable to discern that the bannister was attached insecurely to the post and reasonable pressure exerted in leaning thereupon did not constitute negligence on her part.
Our analysis of the record reveals no error in the factual conclusions reached by the trial judge and we are, therefore, in full accord. In connection with the foregoing factual conclusions, counsel for defendant in endeavoring to reverse the judgment of the trial court, has raised several questions of law. They point to the lease which provided that notice of the defective condition of the premises must be given by the lessee to the lessor in writing and, since it is conceded that no written notice emanated from the lessee to the lessor, therefore, an oral complaint was insufficient to constitute such notice as would bind the lessor.
Recently in Thompson v. Suprena, La. App.1953, 65 So.2d 801, 803, we expressed the opinion:
“While the provisions of the lease require such written notice, nothing appears to that effect in the act (Sec. 1 of Act 174 of 1932, LSA-R.S. 9:3221), and as we said in Mitchal v. Armstrong, La.App., 13 So.2d 506, 507:
“ ‘ * * * it is quite sufficient that the landlord have notice of the vice or defect or, under the prevailing circumstances, “should within reason have known thereof” and “failed to remedy same within a reasonable time thereafter”.’ ”
In oral argument before us defendant’s counsel conceded that they were relying *200 principally on the plea of contributory negligence to defeat recovery herein. In conformity therewith they point out that a child, nine years of age of average intelligence, and under the existing circumstances, could be guilty of contributory negligence ; that this child was in possession of such intelligence, therefore, she was capable of both discerning and appreciating the danger posed by virtue of the insecure condition of this bannister and her failure to do so constituted the negligence which was the proximate cause of the accident.
We concede that a child nine years of age, <jf average intelligence, under certain circumstances, may be guilty of contributory negligence, however, the record discloses that the defendant’s own medical expert, Dr. John D. Andrews, related in a letter, dated October 22nd, 1953, addressed to defendant’s attorneys, “examination revealed a fairly well-developed and well-nourished child of approximately of the stated age (9 years) with cm I.Q. considerably below normal for one of her age.” {Underscoring ours.) The context of the record, wherein it relates to this child, leads us to the same conclusion, therefore, this child was intellectually incapable of appreciating the danger posed and could not, under these circumstances, be guilty of contributory negligence.
We now turn our attention to a consideration of the quantum. Immediately after the accident the child was removed from the situs thereof to Baptist Hospital, where she was examined by Dr. Albert D. Pavy, Jr., and subsequently reexamined and operated upon by Dr. E. Garland Walls.
Counsel for the litigants entered into a stipulation wherein they agreed to offer in evidence, without being bound by the validity thereof, reports of all of the doctors who treated or subsesquently examined the child. In conformity therewith plaintiff introduced in evidence reports of Drs. Albert D. Pavy, Jr., E. Garland Walls and Waldemar R. M.etz, and defendant offered in evidence reports of Drs. Wm. McDonald Boles and John D. Andrews.
All of the medical reports reflect that the child had fully recovered from the effects of the accident. The reports which fully reveal the injuries incurred by the child as the result of the accident and the treatment administered therefor, were those of the attending physicians, Drs. Pavy and Walls. Dr. Pavy’s letter related:
“Patricia * * * sustained a fracture of the nose, multiple abrasions of the face and head and a large hema-toma of left eyelid. The nose fracture was treated by Dr. Garland Walls, who will be able to supply more details. When last seen by me Patricia was doing fine.”
Dr. Walls, in his letter, asserted “* * * on April 10, 1952, I attended Patricia French * * * at Baptist Hospital * * *.
“Examination revealed the nose to have depressed fractures of the nasal bones with comminution of the left side. There was an incomplete fracture of the right maxilla. The child was taken to the operating room and under anaesthetic the depressed and flattened nose was elevated and mould-ed into shape. As far as was possible the internal structure of the nose was returned to normal. The corrected form was maintained by packing the nose inside and by an external splint of mould-ing plastic compound. Child was treated in the hospital April 10, 11, 12 and 13, and in my office April 16, 18, 22 and was discharged in what appeared to be in excellent condition on May 8, 1952.”
Plaintiff contends that the accident not only induced and has perpetuated a condition of nervousness, but, in addition thereto, his daughter’s schooling has been retarded by at least a full year, however, there is no medical evidence contained in the record which substantiates either of these contentions.
For the injuries incurred by Lucille Patricia French and enumerated herein-above the trial judge awarded the sum of *201 $1,500, which we believe to be adequate. The litigants conceded that French expended $272.50 for medical and other expenses as a result of the accident.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.